**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

**MASSACHUSETTS LOBSTERMEN'S**
**ASSOCIATION, INC.,**

**Plaintiff,**

v.

**NATIONAL MARINE FISHERIES**
**SERVICE,** *et al.*,

**Defendants.**

Civil Action No. 23-293 (JEB)

---

<u>**MEMORANDUM OPINION**</u>

In January 2023, Defendant National Marine Fisheries Service announced that it would

close an area off the coast of Massachusetts to lobster fishing from February 1 to April 30 of this

year.  Plaintiff Massachusetts Lobstermen's Association responded with this lawsuit, arguing

that such closure is inconsistent with a provision in the Consolidated Appropriations Act of

2023.  NMFS now moves to dismiss the case as moot because the closure ended on April 30.

The Court agrees and will grant the Motion.

I.      **Background**

Longtime followers of this crustacean conflict know the battle lines well, and the Court

has described them at length before.  <u>See</u> <u>Maine Lobstermen's Ass'n, Inc. v. Nat'l Marine</u>

<u>Fisheries Serv.</u>, No. 21-2509, 2022 WL 4392642 (D.D.C. Sept. 8, 2022); <u>Ctr. for Biological</u>

<u>Diversity v. Raimondo</u>, 610 F. Supp. 3d 252 (D.D.C. 2022).  As this Motion concerns only a

discrete and limited piece of the saga, it requires little background; interested readers may review

the Court's prior Opinions for more.

Under the Endangered Species Act and the Marine Mammal Protection Act, NMFS must take certain actions to protect the endangered North Atlantic Right Whale.  To meet its obligations under the MMPA in particular, the agency several years back announced the 2021 Atlantic Large Whale Take Reduction Plan Amendment Rule (or 2021 TRP Rule).  See 86 Fed. Reg. 51,970, 51,970–71 (Sept. 17, 2021).  Because lobster-fishing lines can entangle and kill the whales, the 2021 TRP Rule (among other things) temporarily restricted or closed certain areas to lobstering during the whales' peak migratory seasons in hopes of minimizing interactions between whale and line.  Id.

In early 2022, and of particular relevance here, NMFS announced an Emergency Rule that temporarily closed to lobster fishing a further area of roughly 200 square miles that the 2021 TRP Rule had "inadvertently . . . left unprotected."  ECF No. 31 (Motion to Dismiss) at 7; see also 87 Fed. Reg. 11,590, 11,592 (Mar. 2, 2022) (2022 Emergency Rule).  The parties refer to that area as the Wedge Area.  Designed to protect the whale during its spring migratory season, the emergency closure was in effect during the month of April 2022 only.  See 87 Fed. Reg. at 11,590, 11,594.

Later that year, the Court ruled in a separate but related matter that the agency's 2021 TRP Rule was insufficient to satisfy its obligations under the MMPA and ultimately remanded without vacatur.  See Ctr. for Biological Diversity, 610 F. Supp. 3d at 280; Ctr. for Biological Diversity v. Raimondo, No. 18-112, 2022 WL 17039193, at *2–3 (D.D.C. Nov. 17, 2022).  In the waning days of 2022, however, Congress stepped in.  As part of the Consolidated Appropriations Act of 2023, it declared that the 2021 TRP Rule was "sufficient to ensure that the continued Federal and State authorizations of the American lobster and Jonah crab fisheries are in full compliance" with the MMPA and ESA until December 31, 2028, which the parties agree

means that no additional regulation is authorized up to that date.  See Pub. L. No. 117-328, Div. JJ, § 101(a).  Importantly here, however, Congress also specified that the Act "shall not apply to an existing emergency rule, or any action taken to extend or make final an emergency rule that is in place on" December 29, 2022.  Id., § 101(b).

On January 31, 2023, NMFS announced another emergency wedge closure, which the parties refer to as the 2023 Wedge Closure (or 2023 Emergency Rule).  See 88 Fed. Reg. 7,362 (Feb. 3, 2023).  That closure is the agency action challenged here.  The Rule closed the same Wedge Area to lobstering as the agency had closed in 2022, this time from February 1 to April 30, 2023.  Id. at 7,362.  The agency contended that this latest closure was permissible, notwithstanding Congress's dictate that the 2021 TRP Rule was sufficient without additional closures, on the ground that it "extend[ed]" the 2022 emergency rule and so fell under the exception in section 101(b) of the CAA.  Id. at 7,363–64.

MALA filed this suit the very next day, on February 1, 2023.  See ECF No. 1 (Compl.). Plaintiff here alleges that the 2023 Wedge Closure violated the CAA because it was not an extension of the 2022 closure; that closure, in Plaintiff's view, expired on April 30, 2022, and so could not be "extended" almost a year later.  The 2023 Wedge Closure, MALA thus contends, is not authorized because the CAA deemed the existing regime (*sans* that closure) sufficient.  Id., ¶¶ 54–59.  The Complaint also alleges that the 2023 Wedge Closure violated the APA in several other respects not relevant here.  Id., ¶¶ 60–71.

Plaintiff immediately moved for a TRO, and the Court held a hearing on February 16, 2023.  See ECF No. 2 (TRO Mot.); ECF No. 29 (Transcript of Feb. 16, 2023, hearing).  The Court expressed skepticism with NMFS's merits argument that the 2023 Wedge Closure constituted an extension of the 2022 closure.  See Hr'g Tr. 30:6–12.  It nonetheless concluded

that MALA had failed to show irreparable harm and denied the Motion on that basis.  Id. at

31:15–17.  The Court gave Plaintiff the option to move for a preliminary injunction with

additional evidence supporting irreparable harm, which it did not do.  Id. at 31:18–24.  NMFS

now moves to dismiss the case as moot because, under the Rule's own terms, the closure ended

on April 30, 2023, and the Wedge Area has reopened to lobster fishing.  See Mot. at 1; ECF No.

38 (May 1, 2023, Notice) at 1.  That Motion is ripe.

## II.    Legal Standard

Defendants move to dismiss the case as constitutionally moot under Federal Rule of Civil

Procedure 12(b)(1).  When a defendant seeks dismissal under that rule, the plaintiff must show

that the court has subject-matter jurisdiction to hear his claim.  See Lujan v. Defenders of

Wildlife, 504 U.S. 555, 561 (1992); US Ecology, Inc. v. U.S. Department of Interior, 231 F.3d

20, 24 (D.C. Cir. 2000).  "Absent subject matter jurisdiction over a case, the court must dismiss

[the claim]."  Bell v. U.S. Department of Health & Human Services, 67 F. Supp. 3d 320, 322

(D.D.C. 2014).

"A Rule 12(b)(1) motion imposes on the court an affirmative obligation to ensure that it

is acting within the scope of its jurisdictional authority."  Grand Lodge of the Fraternal Order of

Police v. Ashcroft, 185 F. Supp. 2d 9, 13 (D.D.C. 2001).  "For this reason, 'the [p]laintiff's

factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion'

than in resolving a 12(b)(6) motion for failure to state a claim."  Id. at 13–14 (quoting 5A Charles

A. Wright & Arthur R. Miller, Fed. Practice & Procedure § 1350 (2d ed. 1987)) (alteration in

original).  Additionally, unlike with a motion to dismiss under Rule 12(b)(6), the court "may

consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack

of jurisdiction." <u>Jerome Stevens Pharms., Inc. v. Food & Drug Admin.</u>, 402 F.3d 1249, 1253

(D.C. Cir. 2005); <u>see also</u> <u>Herbert v. Nat'l Acad. of Sciences</u>, 974 F.2d 192, 197 (D.C. Cir. 1992).

## III.    Analysis

Defendants contend that Plaintiff's challenge to the 2023 Emergency Rule is moot

because the Rule expired last week and no longer has any legal effect.   MALA counters with two

reasons it believes a live controversy exists: the Rule remains active under the agency's own

view of the merits, and, alternatively, two mootness exceptions apply.   The Court considers both

contentions in turn.

A.   <u>Status of Rule</u>

Article III of the Constitution limits federal courts' jurisdiction to "actual, ongoing

controversies." <u>Honig v. Doe</u>, 484 U.S. 305, 317 (1988).   If "events have so transpired that [a

judicial] decision will neither presently affect the parties' rights nor have a more-than-

speculative chance of affecting them in the future," the case is moot, and this Court lacks

jurisdiction to entertain the suit.   <u>Abdelfattah v. U.S. Dep't of Homeland Sec.</u>, 787 F.3d 524, 534

(D.C. Cir. 2015) (internal quotation marks and citation omitted).   Courts routinely hold that

expired agency actions are moot.   <u>See, e.g.</u>, <u>Fund for Animals, Inc. v. U.S. Bureau of Land</u>

<u>Mgmt.</u>, 460 F.3d 13, 18 (D.C. Cir. 2006) (holding moot challenge to expired agency manual); <u>In</u>

<u>re Bluewater Network</u>, 234 F.3d 1305, 1314 (D.C. Cir. 2000) (holding moot challenge to expired

agency memorandum).   As the 2023 Wedge Closure by its own terms expired on April 30, 2023,

Plaintiff's lawsuit challenging it appears presumptively moot.   <u>See</u> 88 Fed. Reg. at 7,362.

MALA counters first with a creative (but unsuccessful) argument that the Rule remains in

effect past April 30.   <u>See</u> ECF No. 33 (Pl. Opp.) at 7.   As Plaintiff tells it, NMFS had argued on

the merits that the 2023 closure was an "extension" of the 2022 closure; that argument, MALA

contends, presupposes that the 2022 closure continued to exist in some form between April 30, 2022 (when it expired), and February 1, 2023 (when the agency nominally "extended" it with the 2023 Emergency Rule). If that is so, Plaintiff points out, the 2023 Rule will likewise on NMFS's view "continue to exist past April 30, 2023, ready to be retriggered at any time." Id. at 7.

This assertion fails for several reasons. First, NMFS's argument was not that the rule continued to operate in a dormant form; it was that the closure need not be continuing and could be "extended" notwithstanding its lapse. See ECF No. 22 (Def. Opp. to TRO Mot.) at 17–18. In any event, as mentioned above, the Court expressed skepticism during the TRO hearing with Defendants' view of the merits, skepticism that applies all the more to this apparent strong-form view of Defendants' position. See Hr'g Tr. 30:6–12. Plaintiff itself recognizes, moreover, that an agency statement that the wedge closure cannot be extended again would doom its argument that the Rule lives on in some dormant form. See Opp. at 7 (MALA arguing its argument works "[u]nless and until NMFS explicitly and expressly declares that the 2022 Wedge Closure is finished and cannot be 'extended again'"). NMFS offered just such a declaration in its Reply, conceding that it lacks legal authority to extend the wedge closure again. See ECF No. 35 (Reply) at 2 ("[E]ven if NMFS desired to extend the 2023 Wedge Closure in 2024, it would lack the legal authority to do so."). The relevant agency action has thus definitively ceased, and, unless an exception applies, MALA's challenge to that action is moot.

B. Mootness Exceptions

Plaintiff next contends that both the voluntary-cessation and the capable-of-repetition-yet-evading-review exceptions apply and save its challenge. Neither does.

First, MALA invokes the doctrine of voluntary cessation to contend that NMFS voluntarily mooted the case by choosing to end the 2023 closure before the Court could rule on

the merits.  The voluntary-cessation exception applies and saves a case from mootness where the defendant "takes unilateral action that moots a case."  PETA v. U.S. Fish & Wildlife Serv., 59 F. Supp. 3d 91, 96 (D.D.C. 2014).  That exception does not apply, however, where a rule expires by its own terms without any action from the defendant agency.  Such expiration is not voluntary cessation because "the defendant did not have to modify anything after [the] complaint was filed."  Id.  That is just what happened here.  The Rule expired by its own terms on April 30; NMFS did not take any unilateral action to withdraw it.  Plaintiff reprises a variation of its characterization of Defendants' position that the agency action remained in effect past April 30, 2022, meaning that only the agency's voluntary decision would bring the closure to an end.  See Opp. at 13–14.  Given the agency's concession (with which the Court agrees) that the Rule automatically expired on April 30, 2023, and cannot be extended, this argument goes nowhere. This exception thus does not apply.

Second, MALA contends that the capable-of-repetition-yet-evading-review exception saves its challenge.  No luck here either.  "To satisfy the exception, a party must demonstrate that (1) the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subjected to the same action again."  Ralls Corp. v. Comm. on Foreign Inv. in U.S., 758 F.3d 296, 321 (D.C. Cir. 2014) (internal quotation marks and citation omitted).  "When these two circumstances are simultaneously present, the plaintiff has demonstrated an exceptional circumstance in which the exception will apply."  Id. (internal quotation marks and citation omitted).  Here, even assuming that Plaintiff has carried its burden as to the first prong of the exception, it falls short on the second.

To satisfy that latter prong, MALA must show a reasonable chance that it will be subject to the same action again.  "The same action generally refers to particular agency policies, regulations, guidelines, or recurrent identical agency actions."  Theodore Roosevelt Conservation P'ship v. Salazar, 661 F.3d 66, 79 (D.C. Cir. 2011) (internal quotation marks and citations omitted).  Here, however, NMFS has offered a declaration from its senior official in the Greater Atlantic Region affirming what the agency describes in its litigating papers: the agency will not issue another emergency rule.  See ECF No. 31-2 (Declaration of Michael Pentony), ¶¶ 1, 4. Courts have credited such declarations in holding that challenged agency action is not sufficiently likely to recur and so a lawsuit is moot.  See, e.g., Worth v. Jackson, 451 F.3d 854, 861 (D.C. Cir. 2006) (crediting "unchallenged agency affidavit" stating that government "[would] not renew" targeted activity to conclude that action was moot); Citizens for Resp. & Ethics in Washington v. Wheeler, 352 F. Supp. 3d 1, 14 (D.D.C. 2019) (same).  The Court follows suit and concludes that, given Defendants' affidavit, Plaintiff has not shown a reasonable expectation that it will be subjected to another such emergency wedge closure again.

MALA's principal rejoinder here is that the agency has noted that it intends to promulgate a new rule in the future, through notice and comment, that seeks to address "the same underlying issue as the 2023 Emergency Rule."  Opp. at 12 (quoting Mot. at 17); see also Pentony Dec., ¶ 5 ("NMFS intends to issue a notice of proposed rulemaking seeking public comment on a rule that would permanently implement a seasonal closure of the [Massachusetts] Wedge Area.").  Such a rulemaking, though it may affect the same area, would not be the "same action."  It would be an entirely different closure, implemented under a different legal authority, and the result of an entirely separate (non-emergency) agency process.  See also Reply at 4 (describing these differences); People for Ethical Treatment of Animals, Inc. v. Gittens, 396 F.3d

416, 423–24 (D.C. Cir. 2005).  Such new rulemaking is not sufficiently identical to the agency's prior temporary emergency closures to qualify for this exception.  Needless to say, Plaintiff will have a separate opportunity to participate in that rulemaking and to challenge it if need be. MALA's challenge here, however, is to only the 2023 Emergency Rule.

*   *   *

Regardless of the Court's view of the merits, then, NMFS's Emergency Rule has expired and no mootness exception applies.

**IV.    Conclusion**

For the foregoing reasons, the Court will grant Defendants' Motion to Dismiss.  A separate Order so stating will issue this day.


/s/ *James E. Boasberg*
JAMES E. BOASBERG
Chief Judge

Date:  May 3, 2023